IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DAN R. FERRIN, | ) | Case No. 05-23065 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| DAN R. FERRIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 06-2024 |
| | ) | |
| COLLEGE OF ST. CATHERINE and | ) | |
| EDUCATIONAL CREDIT | ) | |
| MANAGEMENT CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

FILED
3:07 pm, 4/30/07
Joyce W. Harris
Clerk of Court

## OPINION ON COMPLAINT

On March 7, 2007, the debtor Dan R. Ferrin's Complaint to Determine Dischargeability of Debt came before the court for trial. Mr. Ferrin appeared with counsel, Paul Hunter. The defendant, Education Credit Management Corporation (ECMC) appeared through counsel Miro Kovacevic and Lars Fuller. The College of St. Catherine did not appear. The court has considered the testimony and documentary evidence, the arguments of the parties and the applicable law, and is prepared to rule that the debts are dischargeable.

## Jurisdiction

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) & (b) & 1334 (b). This is a core proceeding as defined by § 157(b)(2)(I).

## Findings of Fact

Mr. Ferrin is 63 years old. At the time of the trial he was unemployed, but was receiving Social Security income of $950 per month and pension income of $370 per month. Mr. Ferrin's monthly expenses exceed his income by at least $900 per month. Mr. Ferrin budgets $500 for food, $500 for transportation expenses, and $400 for medical/dental/optical needs. The court disagrees with ECMC that the budget items are excessive. But, even if they are, Mr. Ferrin cannot meet all of his necessary expenses on his current income.

Mr. Ferrin has several medical problems including cancer, sleep apnea, periodontal disease, a need for $4,000 hearing aids, and a new optical prescription that he has not filled. He has no health insurance.

The debtor owns a 1998 van with mileage exceeding 135,000 miles. Mr. Ferrin testified that if he were to obtain employment, which he is seeking, he would have to budget around $500 to rent a trailer to move his possessions, plus funds for a first and last month's rent deposit. He does not have these funds.

Mr. Ferrin's unstable employment history is lengthy. He has had at least 40 different jobs since high school, including three years in the United States Army. He left some of the jobs voluntarily to improve his employment prospects. However, as discerned by the court

through testimony, Mr. Ferrin's combative and socially averse nature served as the basis for many challenges to authority and changes in employment over the years, both voluntary and involuntary. Mr. Ferrin is qualified to perform a variety of different jobs, although his age is probably now a limiting factor. He has had training and education in a number of different fields, including bartending, carpentry, EMT training, school bus driving, and heavy equipment operations. Despite the varied employment history, Mr. Ferrin's income level remained relatively the same over the years, around $10 to $12 per hour. The longest time Mr. Ferrin held a job was nine years as a carpenter. However, he quit in a dispute with a new foreman. His highest wage during the last three years was $10 to $11 per hour.

In 1990 Mr. Ferrin was homeless and had no family or support. At the suggestion of his doctor, Mr. Ferrin enrolled in college. He attended 7 or 8 years and obtained a degree in technical education, financed by Stafford student loans. Those loans have a current balance in the aggregate of over $83,000, including interest.

Upon graduation, at age 54, Mr. Ferrin took a substitute teaching job. He was unable to obtain a teaching certificate because of conflicts with the certifying agency, so he began tutoring in a children's home. The job was stressful and he quit. Mr. Ferrin moved to Wyoming, but was only able to work as a substitute teacher, a position with low pay and no specific hours. At that time, Mr. Ferrin ended up homeless and seeking treatment at a mental health facility. Mr. Ferrin was fired from his most recent job as a recreation coordinator.

Mr. Ferrin's assets consist of his vehicle and a $3,700 individual retirement account. Mr. Ferrin has never voluntarily paid on any of his student loan debts, although the parties dispute whether some garnishments were taken by the lenders of the loans at issue here. Mr. Ferrin testified that since attending college, he has not had sufficient income to make student loan payments. He also testified that he was unable to obtain a payment schedule from the lenders that he could reasonably meet, causing him to default on the loans.

Mr. Ferrin has not applied for enrollment in the William D. Ford Direct Loan Program (Ford Program), the income-contingent student loan repayment program. He claims the Ford Program administration was unwilling to work with him.

In the Ford Program, a payment schedule is established based on the amount a debtor can contribute to student loan repayment after deducting reasonable expenses. The payment term is from 120 to 360 months. Even if Mr. Ferrin were able to pay the highest monthly amount over ten years, he would have to work well into his 70s. He would be paying on the loans until he is 93 years old if the repayment schedule were calculated over a 30-year term.

If Mr. Ferrin enrolls in the Ford Program, his current monthly payment will be $0. Apparently, interest continues to accrue.

### Conclusions of Law

Mr. Ferrin seeks a discharge of his student loan debt under 11 U.S.C. § 523(a)(8) which excepts educational loan debts from discharge "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."

In the Tenth Circuit, to determine whether a student loan should be discharged under § 523(a)(8), the bankruptcy court applies a three-part test for undue hardship first stated in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987), and adopted by the Tenth Circuit Court of Appeals in *Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302 (10th Cir. 2004). Under the *Brunner* analysis, the debtor must prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for . . . [himself] and . . . [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. If the debtor fails to establish any of the three elements of the test, the debt is not dischargeable. *Id.*

Here, Mr. Ferrin has insufficient income to even pay his minimal expenses, and ECMC does not dispute that he satisfied the first element of the test. In fact, ECMC admits under the Ford Program, Mr. Ferrin would be required to pay nothing based on his present circumstances.

The record of the debtor's past employment and the reasons therefore demonstrate that realistically the debtor may never be gainfully employed at a salary high enough to make a loan payment. ECMC did not refute that this debtor is unable to hold a job for any significant period. The court must view the debtor as he is, not as ECMC believes he should be. Mr. Ferrin's employment prospects are not stellar. And, while his financial problems

may be of his own making, that does not change the fact of his inability to remain employed long enough to pay on the loans.

There is no evidence that Mr. Ferrin has a possibility of employment in the immediate or foreseeable future, and the court concludes such circumstances will likely persist. Mr. Ferrin's financial situation may improve slightly when he is eligible for Medicare, but that in itself is not going to provide him with disposable income.

The major issue in this case is whether the debtor has made a good faith effort to repay his student loans. In *Polleys*, the court discussed the good faith factor at length. The court stated that the failure to make a payment, standing alone, does not establish a lack of good faith. *In re Polleys*, 356 F.3d at 1311. A good faith analysis involves a review of whether the debtor is attempting to repay the loans by maximizing resources and minimizing expenses, and whether the debtor is abusing the student loan system by intentionally creating or contriving the hardship. *Id.* at 1312.

ECMC contends that Mr. Ferrin's failure to enroll in the Ford Program for loan repayment establishes a lack of good faith. ECMC refers the court to the opinion in the case of *Marozsan v. Educ. Credit Mgmt. Corp., et al.*, 2007 WL 608114, at * 4-5 (N.D. Ca. 2007) in support of its argument that if the Ford Program is available, the failure to enroll is sufficient proof of a lack of good faith.

Taking a contrary position, the court in *Educ. Credit Mgmt. Corp. v. Barrett (In re Barrett)*, 337 B.R. 896 (6th Cir. BAP 2006), ruled that to adopt a position such as that

espoused by ECMC here, effectively eliminates student loan discharge from the Bankruptcy Code. The *Barrett* ruling seems more consistent with that of the Tenth Circuit court in *Polleys*. However, this court need not determine whether the failure to enroll in the Ford Program is per se bad faith because enrolling in the Ford Program will not improve Mr. Ferrin's ability to repay the loans or result in a decrease in the amount of the loans. The debtor has never had the ability to repay these loans and is seeking a discharge based on a realistic assessment of his situation. Enrollment in the program would be an exercise in futility.

Nor is there evidence that the debtor has contrived a hardship or created his current situation deliberately to obtain a discharge. He is 63 years old, unemployed, and virtually unemployable due to his long established employment tenor. Therefore, the court concludes that the debtor has established all of the elements of the *Brunner* test as applied by the Tenth Circuit Court of Appeals in *Polleys*. The debts will be discharged as an undue hardship. The court will issue a judgment in accordance with this Opinion.

DATED this 30 day of April, 2007.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
Paul Hunter
Miro Kovacevic